Commonwealth *v.* Wilson, Appellant.

514

Submitted March 19, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Donald Lee Wilson, Sr.,* appellant, in propria persona.

*Kevin A. Hess,* Assistant District Attorney, and *Harold E. Sheely,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., November 16, 1973:

This is an appeal from defendant's conviction after a second trial, of the charge of "Violation of Motor Vehicle Code, Section 1037, in that he did while under

the influence of intoxicating liquor operate a motor vehicle upon the highways of the Commonwealth."

Defendant admits he was under the influence of intoxicating liquor but strenuously denies that he was the operator of the vehicle owned by him at the time it had knocked down a mailbox. He contends that he was a passenger in his vehicle and was found behind the steering wheel in the driver's seat after the vehicle's collision with the mailbox only because the driver, one Barry Shaffer, had fled the scene, leaving the car lights on, and he, the defendant, moved over to the driver's seat to turn the lights off.

Defendant testified that he had a cheeseburger and several beers in The Locust Point Tavern and when he left the tavern at 5:30 P.M. he found Barry Shaffer, a young acquaintance of his, sitting in the passenger seat of his car. Barry asked for a ride to Mechanicsburg to look at a used car. Defendant testified he told Barry to do the driving since defendant had worked all night and part of the day and was tired. Barry then moved into the driver's seat and after 15 or 20 minutes, during which he acquainted himself with defendant's car and made the necessary adjustments, he began to drive. Barry, not being accustomed to power brakes and power steering, lost control of the car when he hit the power brakes and struck the mailbox. At both trials (the first trial resulted in a hung jury) Barry Shaffer took the stand and corroborated defendant's testimony. Barry has since died. No Commonwealth witness saw defendant drive his car at any time prior to or at the time the car struck the mailbox. The entire Commonwealth case was based on the testimony of one Clair Gochenauer and State Trooper Larry J. Corman, both of whom arrived at the scene after the mailbox had been struck. Mr. Gochenauer, then 18 years of age, testified that he was in the garage behind his house located 30 to 50 feet from the road directly

across the point of the impact. He testified he heard "a swishing and a screeching, sounded like a car going into a slide, then I took off running as soon as I heard this, and then I heard the thumping of the car hitting something, or it sounded like a car hitting something, and I was going down the driveway at that time." Mr. Gochenauer testified it took him "less than a second" to run down the driveway, and 3 to 5 seconds to come from the garage until he reached defendant's car where he found defendant behind the wheel on the driver's side. He saw no one else at the scene. He did testify, however, that as he crossed in front of the car, defendant moved forward to turn the lights off and that defendant asked him, "if everybody else was O.K., or if there was anybody else involved in it."

On cross-examination witness Gochenauer testified that as he came around the corner of his house he could not tell what part of the front seat defendant then occupied because the headlights from the car were interfering with his view; that perhaps the lights from a pole lamp further hampered his vision; that he had to pause for traffic on the road, that finally when he arrived to within ten feet of the car he saw defendant then lean forward to put the car lights out and at that time saw defendant seated behind the steering wheel; and that it was possible for someone to leave the car before he arrived if he left fast enough.

The only other witness produced by the Commonwealth was State Trooper Larry J. Corman who also arrived at the scene after the accident. Trooper Corman testified he found defendant sitting behind the steering wheel of his car in the driver's seat and that no one else was in the car. He placed defendant under arrest and drove him in the police car to the Carlisle State Police Barracks, that while en route, in response to the Trooper's questions, defendant stated he was the

driver of the car.[1]   The Trooper testified that though
it was certain that he was well under the influence,
defendant understood the questions asked of him and
his answers were coherent.

The issue in this case is whether the Commonwealth
by the presentation of the testimony of Mr. Gochenauer
and Trooper Corman sustained its burden of proving
defendant's guilt beyond a reasonable doubt.   If it did
not, then defendant's motion in arrest of judgment
should have been granted.

The two cases relied upon by the lower court and the
Commonwealth in upholding the sufficiency of the Com-
monwealth's evidence are distinguishable on their facts.
In *Commonwealth v. Marks,* 164 Pa. Superior Ct. 280
(1949), there were eyewitnesses who testified as to hav-
ing seen defendant Marks driving the truck 45 minutes
before, and only 15 miles away from where he was
found by the state troopers.

A reading of the court's summarization of the evi-
dence presented in that case reveals the strength of and
emphasis placed on that eyewitness testimony as part

---

[1] Defendant contends that this testimony differed from the
Trooper's testimony at the first trial in which defendant alleges the
officer testified that defendant told him *at the scene* that he was
the driver of the vehicle. However, there was no impeachment made
of the Trooper's testimony through use of any such prior incon-
sistent statement. Defendant contends that he cannot now compare
the two trials "because of the lower court's refusal to release the
transcript of the first trial." The Commonwealth makes no reference
in its brief to the Trooper's former testimony, avoiding the subject
altogether. The lower court, however, in its opinion, answers by
saying that defendant's request for the trial transcript was not
made until June 9, 1971, after the verdict of May 12, 1971 in his
second trial, and that no request was made during the trial or be-
fore the verdict. In any event, says the lower court the prior in-
consistent statement could not be used merely to impeach credibili-
ty. The lower court does not give any basis for this conclusion,
merely citing *Com. v. Cooney,* 444 Pa. 416 (1971) which deals with
the issue of *after discovered* evidence which is not here involved.

of the circumstantial evidence surrounding the accident which evidence the court found sufficient to sustain the Commonwealth's burden of proving defendant guilty beyond a reasonable doubt.

In *Com. v. Kerns*, 124 Pa. Superior Ct. 61 (1936), the police officer testified that he *actually saw* defendant operating the vehicle, which testimony, if believed by the jury, supported a guilty verdict. In the instant case no one saw defendant drive; no eyewitness contradicted Barry Shaffer that he drove the car. In our opinion, an important aspect of Shaffer's part in this case is that he testified at both the first and second trials that he was the driver of the car and he testified not voluntarily but under subpoena.

It is true that in a proper case circumstantial evidence may be sufficient to convict but strong suspicion, conjecture or supposition are not. *Com. v. Townsend*, 428 Pa. 281 237 A. 2d 192 (1968); *Com. v. Dasch*, 218 Pa. Superior Ct. 43 (1970). Under all the circumstances of this case—no eyewitness to defendant's operation of the vehicle; no contradiction of Barry Shaffer's testimony, twice given, that he was the driver; the admission testified to by the trooper (which could have been suppressed as a statement taken during an illegal arrest without a warrant)[2] being weakened in probative effect by the trooper's further testimony that it was made while defendant was intoxicated—a reasonable doubt was raised as to defendant's guilt which would prevent a conviction under the law.

The motion in arrest of judgment should therefore have been granted.

The order of the lower court is reversed.

HOFFMAN and SPAULDING, JJ., join in this opinion.

WRIGHT, P. J., WATKINS and JACOBS, JJ., would affirm on the opinion of Judge WEIDNER.

---

[2] *Commonwealth v. Reeves*, 223 Pa. Superior Ct. 51 (1972).

CONCURRING OPINION BY SPAETH, J.:

I believe that the evidence was sufficient to support appellant's conviction of drunken driving and therefore dissent from Judge CERCONE's opinion, but I agree that the motion in arrest of judgment should have been granted.

To establish the offense of drunken driving the Commonwealth must prove (1) that the defendant was operating a motor vehicle (2) while under the influence of intoxicating liquors. Act of April 29, 1959, P. L. 58, §1037, 75 P.S. §1037. Appellant concedes that when he was arrested he was drunk; his argument is that there was not sufficient evidence to prove that he was driving while drunk.

At trial, the Commonwealth presented the following evidence, which is stated in greater detail in Judge CERCONE's opinion: Appellant owned a 1959 Cadillac sedan that struck a mailbox in front of a house in Monroe Township, Cumberland County. A resident of a house nearby, Clair Gochenauer, saw appellant a few moments after the accident sitting in the driver's seat; he saw no one else. Appellant at some point after the accident told a State Trooper that he had been driving the car just before the accident.

By way of defense, appellant and a witness, Barry Shaffer, testified that Shaffer was the driver at the time of the accident. Appellant said that when Shaffer fled, he moved into the driver's seat to turn the lights out, and that this accounted for Gochenauer's testimony.

It may be granted that the Commonwealth's case was not imposing, and that the jury might have acquitted appellant. However, the jury did not, and on review we should not give appellant's evidence undue consideration. The jury was free to reject all of appellant's and Shaffer's testimony, and we cannot second guess the jury. Given the guilty verdict, we must con-

sider the evidence in the light most favorable to the Commonwealth, *Commonwealth v. Young*, 446 Pa. 122, 285 A. 2d 499 (1971), and accept "as true all the evidence upon which, if believed, the jury could have properly based its verdict." *Commonwealth v. Gockley*, 411 Pa. 437, 440, 192 A. 2d 693, 695 (1963).

Nor should too much be made of the fact that no one testified that he saw appellant driving the car before it came to a stop after striking the mailbox. As a general rule, circumstantial evidence will support a conviction. Although Judge CERCONE's opinion acknowledges this rule, it seems to except drunken driving cases by requiring direct evidence that the defendant was driving.

The courts of numerous jurisdictions have wrestled with the question of the sufficiency of circumstantial evidence in drunken driving cases. The general rule is that "[d]irect evidence that the defendant was observed in the act of operating the motor vehicle is not an indispensable requisite to prove his operation." *State v. Costello*, 110 N.H. 182, 183, 263 A. 2d 671, 672 (1970). *See also People v. Schulewitz*, 87 Ill. App. 2d 331, 231 N.E. 2d 678 (1967); *Stephens v. State*, 127 Ga. App. 416, 193 S.E. 2d 870 (1972) (court retreats from holdings that precluded proof of driving by circumstantial evidence).

The Pennsylvania cases are in accord. Neither *Commonwealth v. Marks*, 164 Pa. Superior Ct. 280, 64 A. 2d 207 (1949), nor *Commonwealth v. Kerns*, 124 Pa. Superior Ct. 61, 188 A. 81 (1936), holds that to make out the charge of drunken driving there must be testimony by someone that he saw the defendant driving. It happened in each of those cases that there were eyewitnesses, and in passing upon the sufficiency of the evidence this court considered that fact. The critical case is *Commonwealth v. Walker*, 165 Pa. Superior Ct. 617, 70 A. 2d 435 (1950). There the evidence was that

the defendant's car had crashed through a guardrail and plunged down a twenty foot embankment, with the defendant trapped inside. It was apparent from the circumstances that the defendant must have been the driver. Accordingly, although no one testified to having seen the defendant drive, this court upheld his conviction of drunken driving. (It is true that on appeal counsel for the defendant conceded that the circumstantial evidence showed that the defendant had been driving, but this court did not rest its decision on that concession, instead emphasizing that the circumstantial evidence was "abundant 'proof that the car had . . . been operated on that highway' by the defendant. Facts often speak louder than words." *Id.* at 621, 70 A. 2d at 437.)

It should be noted in this connection that the Commonwealth need not totally exclude the possibility that another person was driving, as it was able to do in *Walker*. This court has said: "Although earlier decisions enunciated the rule that to warrant a conviction on circumstantial evidence alone such evidence must exclude to a moral certainty every hypothesis but that of guilt, or must be inconsistent and irreconcilable with any reasonable hypothesis of the accused's innocence, the more recent decisions state the rule to be that to warrant a conviction on circumstantial evidence the facts and circumstances established by such evidence must be of such a character as to produce a moral certainty beyond a reasonable doubt, but need not be absolutely incompatible with innocence." *Commonwealth v. Feinberg,* 211 Pa. Superior Ct. 100, 113, 234 A. 2d 913, 919 (1967).

When this principle is applied to the present case, it will be seen that the evidence produced by the Commonwealth was sufficient to support the verdict. The jury could have found that Gochenauer, the Commonwealth's witness who lived in the vicinity of the acci-

dent, was on the scene fast enough and in a position to see enough to exclude the possibility that Shaffer was driving and immediately fled from the car. The jury could have found that appellant was sober enough to be accurate when he told the Trooper that he had been driving, and that the Trooper was truthful when he testified to hearing this admission.

The difficulty with the case, in my view, does not lie in deciding upon the sufficiency of the evidence but rather arises from the fact that appellant's counsel made no timely objection to the introduction of appellant's damaging admission, which the Trooper said was made following appellant's warrantless arrest for drunken driving.*

Operating a motor vehicle under the influence of intoxicating liquors is a misdemeanor. A warrantless arrest for a misdemeanor can only be made when the officer has probable cause to believe that it is being committed in his presence. Pa. R. C. P. 102. Consequently, where the officer does not see someone "[o]perating a motor vehicle", he cannot make a warrantless arrest for drunken driving. *Commonwealth v. Brown,* 225 Pa. Superior Ct. 289, 302 A. 2d 475 (1973); *Commonwealth v. Reeves,* 223 Pa. Superior Ct. 51, 297 A. 2d 142 (1972).** Thus appellant's arrest was illegal,

---

\* In his *pro se* brief, appellant states that at the first trial (when the jury disagreed) the Trooper testified that the admission was made before the arrest and during investigative questioning.

\*\* This rule leaves much to be desired, for it may require an officer to choose between making an illegal arrest and leaving a drunk driver on the road where he is a menace both to himself and others. A possible solution to this dilemma may be found in §5505 of the New Crimes Code, 18 Pa. S. §101 *et seq.* (1973), which reads as follows: "A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity." 18 Pa. S. §5505. It would seem that a drunk driver may be arrested for breach of §5505 with-

and his admission following the arrest could on timely objection have been excluded as its fruit. *See Commonwealth v. Pincavitch,* 206 Pa. Superior Ct. 539, 214 A. 2d 280 (1965).

As mentioned, no objection to the introduction of the admission was made. Normally this would preclude review. Here, however, the admission was the heart of the Commonwealth's case. Without it the evidence would have been insufficient to support the verdict. As there was no strategic advantage to be gained by failing to object, it cannot be said that counsel's omission "had some reasonable basis designed to effectuate his client's interest." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A. 2d 349, 352 (1967). Thus the introduction of the admission constituted "basic and fundamental error". *Commonwealth v. Jennings,* 442 Pa. 18, 274 A. 2d 767 (1971) ; *Commonwealth v. Williams,* 432 Pa. 557, 248 A. 2d 301 (1968). Since it is clear that without the admission the Commonwealth cannot support the charge, I agree that we should reverse and order appellant discharged.

---

out a search warrant. Pa. R. Crim. P. 102. Having been thus legally detained, his subequent statements would be admissible. Also, he could be lawfully taken to a facility where his intoxication could be scientifically ascertained, and, most importantly, he would no longer be a menace to himself and others. It is not suggested that §5505 be used as a device to herd citizens to police stations in order to conduct inquiries that extend beyond their state of intoxication, but no reason appears why it should not apply to the drunk driver who has been in an accident or has committed the offense of drunken driving in the presence of witnesses on whom the officer has reason to rely.